Jason T. Holden (jason@fhht.law)
Katie R. Ranta (katie@fhht.law)
Dana A. Henkel (dana@fhht.law)
Faure Holden Henkel Terrazas, P.C.
P.O. Box 2466
Great Falls, MT 59403
Phone: 406-452-6500
Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| JUSTIN P. HOOKER and L.H., a minor, by and through her parent and legal guardian, JUSTIN P. HOOKER,<br><br>Plaintiffs,<br>v.<br><br>HOBBY LOBBY STORES, INC,<br><br>Defendant. | Cause No. CV-25-112-GF-JTJ<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs, by and through their counsel of record, Faure Holden Henkel Terrazas, P.C., for their Complaint allege as follows:

## PARTIES

1. Plaintiff Justin P. Hooker (Justin) is a resident of and domiciled in Shelby, Toole County, Montana.

2. L.H. is a minor child and Justin's daughter. L.H. is a resident of and domiciled in Shelby, Toole County, Montana.

3. Defendant Hobby Lobby Stores, Inc. (Hobby Lobby) is an Oklahoma

for-profit corporation with its principal place of business located in Oklahoma City, Oklahoma, and it operates a retail store located in Great Falls, Cascade County, Montana.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, Local Rule 3.2(b), and Mont. Code Ann. § 25-2-122 because the torts were committed in Cascade County, Montana.

## FACTUAL ALLEGATIONS

6. Hobby Lobby operates a retail store at 1200 10th Avenue South, Great Falls, Montana (the Store).

7. On February 4, 2023, Justin and L.H. entered the Store at approximately 12:00 noon or shortly thereafter.

8. Justin and L.H. were walking through the craft paper aisle and encountered a woman squatting down to view items on the lower shelves.

9. As Justin moved past the woman, he slipped and fell forward through no fault of his own.

10. Justin extended his right arm to catch himself.

11. As he fell, Justin's right arm hit a display shelf which had a glass and

2

metal divider affixed vertically to the display shelf. A photographic example of the divider is attached as Exhibit A.

12. Justin landed on the ground and felt intense pain in his right wrist.

13. Justin stood up and continued walking, but L.H. told him there was blood where he fell.

14. Justin looked down and blood was pouring out of his right wrist.

15. Justin's right wrist was lacerated as shown in Exhibit B.

16. The glass and metal divider on the Store's shelving cut his arm during his fall.

17. Justin's ulnar artery was severed, several tendons were lacerated, and a large chunk of flesh was hanging off his arm.

18. Justin, a health care professional, used his knowledge and immediately applied pressure to his injury and told L.H. to call 911.

19. A bystander applied a tourniquet to Justin's right arm as they awaited the arrival of paramedics.

20. The tourniquet was fashioned using ribbon in the Store.

21. Once the ambulance arrived, an EMT helped Justin walk out of the store and into the ambulance.

22. L.H. rode in the ambulance with Justin.

23. Once in the ambulance, another tourniquet was placed on Justin's

right arm.

24. Justin maintained constant pressure on his right wrist until reaching the emergency room.

25. In the emergency room, a physician examined Justin's injuries, placed bandages into the soft tissue deficit, wrapped his right wrist tightly, and prepared him for a flight to Billings Clinic Hospital for surgery to save his right hand.

26. Once at Billings Clinic Hospital, Justin was rushed into surgery.

27. The glass and metal shelf divider at the Store severed Justin's ulnar artery, ulnar nerve, various superficial nerves, and multiple tendons in his third, fourth, and fifth digits on his right hand.

28. A cardiothoracic surgeon repaired Justin's ulnar artery.

29. An orthopedic surgeon repaired Justin's ulnar nerve and severed tendons.

30. Justin was advised that his recovery would be long, difficult, painful, and unpredictable due to the ulnar arterial and nerve injuries.

31. During the first 2 weeks of Justin's recovery, he was in excruciating pain consisting of burning, electrical, and stabbing pains. Justin also experienced nausea, lightheadedness, and fatigue anytime he stood up.

32. Justin's physicians placed him on Lyrica, Cymbalta, and Oxycodone for pain management.

33.     During Justin's post-operative care, he was placed in a flexion splint for 12 weeks and instructed to start occupational and physical therapies to help regain function in his right hand.

34.     Justin's right hand remains partially paralyzed.

35.     In addition to physical and occupational therapies, Justin began counseling for the impact this injury caused on his emotional wellbeing.

36.     Justin is right-hand dominant and the injury to his right wrist and hand affected not only his mental, emotional, and physical health, but also his ability to perform his job as a podiatrist and surgeon at Marias Healthcare Services and Logan Health in Shelby, Montana.

37.     L.H. witnessed her father Justin's severe injuries, including his blood on the ground and pouring out of his right wrist, a bystander applying a tourniquet to attempt to stop his bleeding, and riding with her father in an ambulance, hearing her father tell her mother that he loved her, and watching him be treated.

38.     L.H. experienced terror, panic, and fear for her father's life; she cried and hyperventilated at the hospital.  She lost sleep and has nightmares and flashbacks to this day.

## COUNT I – PREMISES LIABILITY
### (Justin v. Hobby Lobby)

39.     Plaintiffs reallege the allegations contained in paragraphs 1 through 38 as if fully set forth herein.

40. Hobby Lobby owed a duty to Justin to use ordinary care in maintaining the Store in a reasonably safe condition and to warn others of hidden or lurking dangers.

41. There was a dangerous condition present in the Store – glass and metal shelf dividers that were attached vertically to horizontal shelves.

42. There was a dangerous condition present in the Store – a slippery and/or otherwise unsafe flooring surface.

43. Whether Hobby Lobby had notice of the dangerous conditions is immaterial.

44. The dangerous conditions were not open or obvious.

45. Even if the dangerous conditions were open and obvious, Hobby Lobby should have anticipated harm would occur.

46. Hobby Lobby breached its duties to Justin.

47. As a result of Hobby Lobby's breaches, Justin was injured and suffered damages.

## COUNT II – ORDINARY NEGLIGENCE
### (Justin v. Hobby Lobby)

48. Plaintiffs reallege the allegations contained in paragraphs 1 through 47 as if fully set forth herein.

49. Hobby Lobby owed a duty to Justin to use reasonable care when organizing the Store and its inventory, including using shelving and shelving

organizers that would not injure its customers.

50. Hobby Lobby owed a duty to Justin to use reasonable care when maintaining the floors of the Store and keep them in a reasonably safe condition.

51. Hobby Lobby breached its duties to Justin.

52. Hobby Lobby's breaches caused Justin's injury.

53. As a result of Hobby Lobby's breaches, Justin suffered damages.

**COUNT III – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(L.H. v. Hobby Lobby)**

54. Plaintiffs reallege the allegations contained in paragraphs 1 through 53 as if fully set forth herein.

55. Justin was severely injured at Hobby Lobby.

56. L.H., Justin's daughter, witnessed Justin's injury.

57. That customers would bring their children into the Store was reasonably foreseeable.

58. Justin's injury, and L.H. witnessing that injury, was reasonably foreseeable.

59. Witnessing Justin's injury and the aftermath caused L.H. severe emotional distress.

60. L.H.'s emotional distress was so severe that no reasonable person could be expected to endure it.

61. L.H. is entitled to recover damages for her emotional distress.

## PRAYER FOR RELIEF

Plaintiffs seek judgment in their favor and against Hobby Lobby as follows:

62. For all damages suffered by Justin, including:

    a. past medical expenses, and related out of pocket expenses, which total approximately $95,000, exclusive of pre-judgment interest;

    b. future medical expenses;

    c. pain and suffering;

    d. emotional distress;

    e. lost wages;

    f. lost earning capacity;

    g. loss of established course of life; and

    h. permanent disfigurement/scarring;

63. For all damages suffered by L.H. as a result of her serious and severe emotional distress;

64. For all pre- and post-judgment interest to the fullest extent allowed by law;

65. For all their attorneys' fees and costs to the fullest extent allowed by law; and

66. All other relief the Court deems just, equitable, and proper.

//

## DEMAND FOR JURY TRIAL

Justin and L.H. demand a jury trial on all issues so triable.

Dated this 31st day of December, 2025.

                         FAURE HOLDEN HENKEL TERRAZAS, P.C.

                         By: *Jason T. Holden*
                            Jason T. Holden